UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                                                           Criminal Action No.:  5:14-CR-6-R

KEVIN ALAN LEWIS                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Kevin Alan Lewis two motions to suppress.  (Docket #39, 40).  The United States filed a response.  (Docket #43).  A suppression hearing was held on January 26, 2015.  (Docket #45).  Lewis has filed a brief in support of his motion to suppress.  (Docket #51).  The United States has filed a brief in response.  (Docket #52).

In Lewis's first motion, he moves to suppress all statements that he made to law enforcement following his arrest on the grounds that he was not advised of his *Miranda* rights. (Docket #39).  Lewis also moves to compel the United States to produce any audio or video recordings of his interrogations.  (Docket #39).  In Lewis' second motion he moves to suppress evidence derived from Lewis's iPhone on the grounds that it was seized without a warrant and in violation of Lewis's Fourth Amendment rights.  (Docket #40).

For the following reasons, Lewis's motions to suppress (Docket #39, 40) are DENIED.

BACKGROUND

This motion arises out of the arrest of Kevin Alan Lewis in the early hours of March 12, 2014.  On the evening of March 11, the FBI and Army CID received information that Lewis had

engaged in illegal sexual activity at Fort Campbell with an 11-year-old boy. That night, FBI Special Agent Alfred Burney interviewed the victim, his mother, and his stepfather.

The victim's mother explained that the victim had an iPod Touch that could be used to send text messages. The victim's older brother had an iPhone. The iPod Touch and iPhone shared the same iCloud account. One night, the victim's older brother turned on his iPhone and it began to populate the conversation between the victim's iPod Touch and Lewis's phone. (Docket #45, p. 10). The conversation included pictures of the victim partially undressed, discussions about marriage, and other inappropriate conversations. The victim's mother was able to cross-reference the phone number against the number she had for Lewis. She confronted Lewis and Lewis denied any wrongdoing. (Docket #45, p. 12). When she confronted the victim, he said there had been "some kissing done" between him and Lewis but did not disclose any other sexual conduct. (Docket #45, p. 12). The victim's mother also stated that there were four children in Lewis's home, including three step-children. She also stated that Lewis's wife had been deployed to Afghanistan approximately two month prior. (Docket #45, pg. 14-15).

The victim's stepfather stated that when he confronted the victim, the victim admitted that he had engaged in sexual conduct with Lewis on three to four occasions. He also stated that the victim had occasionally brought gifts home and claimed they were from friends. (Docket #45, p. 16).

Burney inspected the iPhone and iPod Touch and confirmed they contained the alleged conversations between the victim and Lewis. Burney then interviewed the victim. The victim stated he had engaged in sexual conduct with Lewis on three to four occasions approximately one week prior to the interview. (Docket #45, p. 19). The victim claimed Lewis instructed him

to delete all messages and send a smiley face to Lewis to confirm that messages had been deleted. (Docket #45, p. 22). Burney also reviewed Lewis's criminal history and learned Lewis had been charged with sexually molesting a child and was a registered sex offender. (Docket #18).

The interviews concluded shortly after midnight. Burney determined there was probable cause to arrest Lewis without a warrant. At 1:00 a.m. on March 12, 2014, FBI and CID agents arrived at Lewis's residence. The agents knocked and announced their presence. After a one to two minute wait, during which time the agents could see silhouettes moving in the house, a boy answered the door. (Docket #45, p. 27). The boy indicated Lewis was upstairs. Burney ascended the stairs and saw Lewis standing in his bedroom doorway holding his cellular phone. Burney instructed Lewis to put down the phone and then handcuffed Lewis. (Docket #45, p. 30).

Lewis' stepdaughter testified that after Lewis was removed from his bedroom, she entered his bedroom and picked up Lewis's phone, initially believing it was hers. A law enforcement agent entered the bedroom and ordered the stepdaughter to hand over the phone, which she did. (Docket #45, pg. 68-71).

Lewis was transported to CID office. At 1:51 a.m., Burney advised Lewis of his *Miranda* rights. Lewis waived his rights and denied all allegations. (Docket #45, p. 44). Lewis was interviewed a second time at 3:17 a.m., this time by Special Agent Joubert. (Docket #45, p. 45). Lewis was again advised of his *Miranda* rights. In both instances, Lewis signed a form waiving his rights. (Docket #45, p. 64). During the second interview, Lewis admitted to sexual conduct with the victim. (Docket #45, p. 75). Neither interview was recorded pursuant to FBI protocol in place at that time. (Docket #45, p. 84).

Lewis moves to suppress any statement he made following his arrest. Lewis also requests the production of any audio or visual recording of Lewis's interrogation. (Docket #39). Lewis also argues the seizure of his phone was done without a warrant and in violation of his Fourth Amendment rights. Lewis moves to exclude all evidence derived from the phone. (Docket #40, 51).

## STANDARD

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. "[It] protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Minnesota v. Olson,* 495 U.S. 91, 96 n. 5 (1990) (citation omitted).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (citing *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir.2007); *Henry v. United States,* 361 U.S. 98, 102 (1959). "Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *United States v. Romero*, 452 F.3d 610, 616 (6th Cir. 2006) (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

## DISCUSSION

The Court will first address (I) Lewis's motion to suppress statements Lewis made to law enforcement following his arrest. Then, the Court will address (II) Lewis's motion to compel the United States to produce video or audio recordings of such statements. Finally, the Court will address (III) Lewis's argument that his cell phone was seized in violation of his Fourth Amendment rights.

### I. Lewis's Statements to Law Enforcement.

In *Miranda v. Arizona*, the Supreme Court held that a suspect in custody must be informed of certain rights before he can be interrogated, among which is the right to remain silent. 384 U.S. 436, 479 (1966). In both the Fifth Amendment context of invoking the right to remain silent and the Sixth Amendment context of invoking the *Miranda* right to counsel, a suspect must invoke his rights "unambiguously." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010). The Sixth Circuit, in applying *Berghuis*, has since held that "[a] defendant's invocation of his *Miranda* rights must be clear and unequivocal before interrogations must end." *United States v. Amawi*, 695 F.3d 457, 485 (6th Cir. 2012) (citing *Berghuis*, 130 S. Ct. at 2260). Thus, "a suspect must assert his right to remain silent with sufficient clarity that a reasonable officer would perceive it as such under the circumstances." *Id.* (quoting *Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008)). The Government bears the burden of proving, by a preponderance of the evidence, that a defendant voluntarily waived his Miranda rights. *Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Lewis claims "he was subjected to custodial interrogations without first being effectively advised of and knowingly and intelligently waiving his right to remain silent, his right to counsel, and the fact that anything he said or uttered could be used against him in a court of law." (Docket #39).

At the suppression hearing, Burney testified that he advised Lewis of his *Miranda* rights before the first interrogation. (Docket #45, p. 32). Specifically, Burney presented Lewis with an "FD-395 Advice of Rights" form which Burney read to Lewis. (Docket #45, p. 33). Lewis initialed the form as Burney read each section and Lewis signed the form at the bottom. (Docket #45, p. 34). This process was repeated, and Lewis signed a second *Miranda* waiver form, before

5

Lewis was interrogated by Joubert. (Docket #45, p. 64). There was no contradicting evidence presented that suggests Lewis was not informed of his *Miranda* rights or did not voluntarily waive those rights. *See Berghuis*, 700 F.3d at 888. Accordingly, the United States has met its burden of proving that Lewis knowingly and voluntarily waived his *Miranda* rights.

## II.     Audio and Video Recording of Interrogations.

Lewis moves to compel the United States to produce all audio or video recording of any statements made by Lewis during his interrogation. (Docket #39). At the suppression hearing, Burney testified that there were no recordings made of Lewis's arrest. (Docket #45, p. 31). Burney also testified that there were no recordings made while Lewis was in custody and being interrogated. (Docket #45, p. 39). At that time, the FBI did not have a policy requiring custodial interrogation to be recorded.[1] Joubert confirmed that the interrogations of Lewis were not recorded. (Docket #45, p. 62). Accordingly, Lewis's motion to compel the production of these recordings will be denied.

## III.    Cell Phone Seizure.

Finally, Lewis moves to suppress evidence obtained as a result of the seizure of Lewis's cellular phone on March 12, 2014.[2] Lewis argues the seizure of this phone was done without a warrant, without Lewis's consent, and in violation of the Fourth Amendment. (Docket #51). The United States argues the seizure was proper because the phone was in plain view, the seizure

---

[1] Attorney General Eric Holder announced that beginning July 11, 2014, the Department of Justice would follow a new policy "that creates a presumption that statements made by individuals in federal custody, following arrest but prior to their first appearance in court, will be electronically recorded." Press Release, Department of Justice, Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements (May 22, 2014) (on file with Department of Justice). This policy was announced after Lewis was interrogated.

[2] There is no argument that the subsequent search of the cell phone's contents was justified because the United States obtained a search warrant before searching the cell phone's contents.

6

was justified by exigent circumstances, and the seizure was incident to an arrest. (Docket #52). The Court will first address whether the seizure justified by the (A) plain view doctrine. Then, the Court will address whether (B) exigent circumstances justified the seizure. Finally, the Court will address the argument that the (C) seizure was incident to an arrest.

### A. Plain View.

"The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable." *Horton v. California*, 496 U.S. 128, 133 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). "Four factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007); *Minn. v. Dickerson*, 508 U.S. 366, 375 (1993). "The government has the burden of proving the legality of a warrantless search." *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007).

The first, second, and fourth factors are easily met. The phone was in plain view when Burney observed Lewis holding it. (Docket #45, p. 30). The police had probable cause to arrest Lewis and were therefore legally present at and had a right to access[3] Lewis's house. *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004) ("The difference between 'lawfully positioned' and 'lawful right of access' is thus that the former refers to where the officer stands when she sees the item, and the latter to where she must be to retrieve the item.").

---

[3] "The final requirement, that the officer have a lawful right of access to the object, is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises." *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004).

7

The third factor – whether the incriminating nature of the phone was immediately apparent – is also met. In deciding this factor, a court may consider several sub-factors, such as "whether the intrinsic nature or appearance of the object gives probable cause to believe it is associated with criminal activity; . . . whether the officer, at the time of the discovery of the object and with the facts then available, can determine probable cause of the object's incriminating nature" and "whether the officer can recognize the incriminating nature of the object as the result of his instantaneous sensory perception, as opposed to further investigation." *United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007).

In this case, the intrinsic nature of a cell phone does not immediately give suspicion that it is associated with criminal behavior. *Cf. United States v. Lijewski*, 39 F. Supp. 3d 917, 925 (E.D. Mich. 2014) ("sawed-off shotguns have an immediately apparent criminal nature"). However, the facts available to Burney at that time included the knowledge that Lewis had sent and received incriminating messages on his cell phone. *See United States v. Blakeney*, 942 F.2d 1001, 1028 (6th Cir. 1991) (upholding seizure of documents relating to methamphetamine conspiracy found while police were searching for stolen jewelry because the police knew the defendant was a fugitive from methamphetamine charges). Furthermore, because the cell phone was in Lewis's hand, no further investigation was needed to conclude the cell phone belonged to Lewis. "The standard does not demand an 'unduly high degree of certainty;' rather, a plain view seizure is 'presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997) (*quoting Texas v. Brown*, 460 U.S. 730, 741-742 (1983)). The seizure of an apparently innocuous item may be proper when law enforcement have probable cause to believe it is connected to illegal activity. *United States v. Mathis*, 738 F.3d 719, 733 (6th Cir. 2013); *United*

*States v. Dirr*, 2009 U.S. Dist. LEXIS 123549 (E.D. Tenn. 2009) (upholding seizure of books, cassettes, and documents that showed defendant participated in tax avoidance scam); *United States v. Chandler*, 437 Fed. Appx. 420, 428 (6th Cir. 2011) (unpublished) (upholding seizure of a large amount of currency because, although possession of currency is normally "innocent behavior," the police "had reasonable suspicion to believe that Ciers had recently participated in an illegal narcotics transaction").

Burney had probable cause to believe that the cell phone in Lewis's hand was the same cell phone Lewis used to send and receive incriminating messages to a minor. Therefore, law enforcement could seize the phone under the plain view exception.

### B. Exigent Circumstances.

"Exigent circumstances" is another exception to the general rule that warrantless searches and seizures violate the Fourth Amendment. *United States v. Radka*, 904 F.2d 357, 360 (6th Cir. 1990). "The exigent circumstances exception relies on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant." *Id*. at 361. The Sixth Circuit has identified four situations commonly considered to be exigent circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, or (4) a risk of danger to the police or others." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). The "government bears the 'heavy burden' of demonstrating exigency." *Id*. (*citing Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)).

In general, law enforcement may seize a cell phone that they reasonably suspect contains evidence to prevent its destruction. *Riley v. California*, 134 S. Ct. 2473, 2486 (2014). They must, however, obtain a search warrant before searching the contents of that phone. *Id*. at 2485; *see United States v. Clark*, 29 F. Supp. 3d 1131 (E.D. Tenn. 2014). The distinction is made

because unless the police physically secure the phone, it is easier to a person to access the phone and delete incriminating evidence. Once the phone is secured, this risk has passed,[4] and police must generally obtain a search warrant. *Riley*, 134 S. Ct. 2473.

In this case, law enforcement had a reasonable belief that evidence on the cell phone would be destroyed if they did not seize it. Lewis clearly understood the importance of destroying evidence, as demonstrated by Lewis instructing the victim in how to delete incriminating texts and verify that he had done so. Lewis was aware that he was suspected of engaging in illegal behavior from the texts sent by the victim's mother. When law enforcement arrived at Lewis's house, they waited one to two minutes before a minor answered the door. (Docket #45, p. 26). Law enforcement could reasonably believe that during this time Lewis was destroying evidence or instructing one of the minors in the house how to delete evidence from his phone. Furthermore, when law enforcement did go to retrieve Lewis's phone, it was in the possession of Lewis's teenage stepdaughter, who had previously been instructed to stay in her room but was in Lewis's bedroom with his phone. Considering these factors, the United States has demonstrated the likelihood that evidence on Lewis's cell phone would be destroyed if the phone was not seized, and therefore exigent circumstances justify the warrantless seizure of Lewis's phone.

### C. Seizure Incident to an Arrest.

Finally, the United States argues that the seizure of Lewis's cell phone was proper as a search incident to an arrest. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in

---

[4] *Riley* acknowledges the possibility of remote wiping or locking a phone. *Riley*, 134 S. Ct. at 2486.

order to resist arrest or effect his escape." *Chimel v. California*, 395 U.S. 752, 762-63 (1969). "In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id*. *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011). The permissible scope of this search is limited to "the arrestee's person and the area within his immediate control." *Chimel*, 395 U.S. at 763.

In this case, Lewis's phone was in his immediate control at the time of the arrest. Lewis argues that the phone was no longer in his immediate control when he placed it on his bed and walked into the hallway, where he was arrested. (Docket #51). However, by that time, law enforcement no longer needed to search for the phone because they had identified it in Lewis's hand. Comparatively, had Lewis's phone been sitting on his bed and not in plain sight when Burney arrested Lewis, then law enforcement could not conduct a warrantless search outside of Lewis's immediate control to try and find the phone. However, in this case law enforcement identified the phone and instructed Lewis to put it down, requiring no need for a further search for the phone. To accept Lewis's argument would allow suspects to frustrate a search for evidence incident to an arrest by simply throwing identified evidence outside the suspect's immediate control.

## CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Lewis's motions to suppress (Docket #39, 40) are DENIED. A telephonic further proceedings is set on April 30, 2015 at 9:30 a.m. Central Time. The Court shall place the call to counsel.

cc: counsel of record

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

April 24, 2015